IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jarode Jermaine Witherspoon, ) | CIVIL ACTION NO. 9:16-3867-MGL-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| NFN Marshall, Lt. Chestnut, Tim Riley, ) | |
| Gary Lane, A/Warden NFN Goodsons, ) | |
| and Nurse NFN Jones, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.[1] Plaintiff, a frequent filer of litigation in this Court who is an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants, all employees of the SCDC.

The Defendants[2] filed a motion for summary judgment pursuant to Rule 56,

---

[1] 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[2] The Defendant "Nurse NFN Jones" has never been served with process. See Court Docket Nos. 19 and 20. The motion for summary judgment has been filed by the remaining Defendants.



Fed.R.Civ.P. on August 9, 2017. As the Plaintiff is proceeding pro se, a Roseboro order was entered on August 10, 2017 advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file an adequate response, the Defendants' motion may be granted, thereby ending his case. On August 23, 2017, Plaintiff filed a motion for an extension of time to file his response. However, in an Order filed August 24, 2017, the Court noted that Plaintiff had already been provided an extended time to respond to the pending motion for summary judgment, that his response was not even due until September 11, 2017, and that Plaintiff had further provided no reason in his motion for why he should be provided additional time to respond.[3] Therefore, Plaintiff's motion was denied.

The time for Plaintiff to respond to the Defendants' motion has now expired. However, notwithstanding the specific warning and instructions as contained in the Court's Roseboro order, Plaintiff failed to ever file any response in opposition to the Defendants' motion, or to contact the Court in any way following the denial of his motion to extend time on August 24, 2017. The Defendants' motion is now before the Court for disposition.[4]

## I.

Initially, as Plaintiff failed to respond to the Defendants' motion for summary judgment notwithstanding the specific warning and instructions as set forth in the Court's Roseboro

---

[3] In his motion, Plaintiff sought an additional ninety (90) days to file his "paper work" on the motion for summary judgment. That would have allowed Plaintiff until on or about December 11, 2017 to file a response to the Defendants' motion, which was filed on August 9, 2017.

[4] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.



order, the undersigned finds that Plaintiff meets all of the criteria for dismissal under Chandler Leasing Corp. . Lopez, 669 F.2d 919 (4th Cir. 1982).[5] Accordingly, this action should be dismissed for lack of prosecution. See Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978); Rule 41(b), Fed.R.Civ.P.[6]

**II.**

Even if Plaintiff's claims are not dismissed for failure to prosecute and are considered on the merits, the Defendants are still entitled to summary judgment in this case. First, Plaintiff's failure to respond to the motion for summary judgment by itself may be considered as a basis on which to grant the Defendants' motion. See Coker v. International Paper Co., No. 08-1865, 2010 WL 1072643, at * 2["[A] plaintiff can abandon claims by failing to address them in response to a summary judgment motion."]; Jones v. Danek Medical, Inc., No. 96-3323, 1999 WL 1133272 at * 3 (D.S.C. Oct. 12, 1999)["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."]. Moreover, the Defendants have provided probative evidence (discussed hereinbelow) showing that they are entitled to summary judgment in this case, while Plaintiff has failed to provide any evidence (although, in light of Plaintiff's pro se status, the undersigned has considered the factual allegations set forth in Plaintiff's

---

[5]He is personally responsible for proceeding in a dilatory fashion, the Defendants are suffering prejudice due to having to expend time and resources on a case in which the Plaintiff is unresponsive, and no sanctions other than dismissal appear to exist as the Plaintiff is indigent (and therefore not subject to monetary sanctions) and he has otherwise failed to respond to Court filings despite Court orders requiring him to do so. Lopez, 669 F.2d at 920.

[6]After a litigant has received an explicit warning as to the consequences of failing to timely comply with an order of a Magistrate Judge, and has failed to respond to that order, the district court may, under Fed.R.Civ.P. 41(b), dismiss the complaint based upon the litigant's failure to comply with that court order. See Simpson v. Welch, 900 F.2d 33, 35-36 (4th Cir.1990).



Complaint as evidence in issuing the recommendation contained herein[7]) to support his allegations or to survive summary judgment. See Baber v. Hospital Corp. of America, 977 F.2d 872, 874–875 (4th Cir. 2991)[Once moving party establishes basis for summary judgment, to survive summary judgment the opposing party must respond with evidence showing a genuine issue for trial].

Plaintiff alleges that when he was transferred from the Lexington County Detention Center (where he was apparently a pre-trial detainee) to the SCDC, he was eating "reg-trays" until he was "food poisoned by being . . . sick for 2 weeks ½ from eating . . . healthy heart diet trays uncooked meats, hard dry rice, molded light bread, old grits". Plaintiff alleges that he has been "food poisoned" starting on October 12, 2016 and continuing through October 27, 2016. Plaintiff appears to allege that the Defendant Marshall (the food supervisor) is responsible for his being "poisoned". Plaintiff also alleges that he is passing blood, that he told Marshall that he was bleeding, and that the nurses as well as the Defendants Associate Warden Lane and Warden Riley "knows it". Plaintiff also complains that the D-Unit lockup SCDC officials will not call his mental health counselor or tell the medical doctors the "true facts", and that his mental illness has been made "unstable" by food poisoning. Plaintiff further alleges that medical has "refused to come or take action". Plaintiff

---

[7]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Here, however, it is unclear whether Plaintiff's Complaint as signed could be considered a "Verified" Complaint. See Court Docket No. 1, p. 12. Even so, in light of Plaintiff's pro se status, and out of an abundance of caution, the undersigned has considered the factual allegations set forth in the Complaint in issuing a recommendation in this case, even though Plaintiff did not otherwise respond to Defendants' motion.



alleges that all of this happened while he was housed at the Broad River Correctional Institution.[8] Plaintiff seeks monetary damages. See generally, Complaint.

In an attachment to his Complaint Plaintiff talks about how the Behavior Management Unit (BMU) is "designed as a possible alternative to long term segregation placement for inmates . . . having a mental health classification". Plaintiff then (apparently) proceeds to complain about homosexual activity taking place in this Unit. Plaintiff also alleges that he and the Defendant Jones engaged in sexual activity, and that Plaintiff feels "sexual abused". Plaintiff further alleges that Jones threatened him and that he fears he is in danger from Nurse Jones, who is at the Kirkland Correctional Institution. Plaintiff alleges that he wants "this PREA[9] Nurse Mr. Jones name reported". See Plaintiff's Attachment to Complaint.

As noted, Plaintiff has not submitted any affidavits, medical documents, or any other evidence to support his claim that he was being "poisoned" or had any medical emergency relating to passing blood that was ignored or went untreated by prison officials.[10] Conversely, in support of

---

[8]Plaintiff is currently housed at the Allendale Correctional Institution. See Court Docket No. 24.

[9]The Prison Rape Elimination Act (PREA) was enacted to address the problem of rape in prison, authorize grant money, and create a commission to study the issue. See Byrd v. SCDC, No. 11-3340, 2013 WL 5309759, at * 11 (D.S.C. Sept. 19, 2013).

[10]It is unclear what to make of the attachment to Plaintiff's Complaint wherein he discusses Nurse Jones and the Kirkland Correctional Institution. In any event Nurse Jones has never been served with process in this case. Pursuant to Rule 4(m), Fed.R.Civ.P., "[i]f a defendant is not served within ninety (90) days after the complaint is filed, the court - on motion or on its own after notice to the Plaintiff - must dismiss the action without prejudice against that Defendant . . . but if the Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Here, the time for service began to run on June 16, 2017 (date of Order authorizing service of process), and the ninety (90) day period for service provided by Rule expired on September 14, 2017. As previously noted, the docket reflects that the Defendant Nurse Jones has
(continued...)



summary judgment, the Defendants have provided not just copies of numerous medical records and documents showing the medical care and treatment Plaintiff received, but also an affidavit from a medical professional attesting that the medical care Plaintiff received for his complaints was within the applicable standard of care.[11]

Dr. John McRee attests in an affidavit that he is a staff physician for the Department of Corrections and the Acting Medical Director. Dr. McRee attests that Plaintiff was returned to the SCDC on or about October 10, 2016, where he was initially housed in a restricted housing unit at the Kirkland Correctional Institution. Dr. McRee attests that Plaintiff is mentally ill, and that based on Plaintiff's mental health status and diagnosis, he takes medicine for his mental illness, and mental health counselors and psychiatrists frequently see and evaluate him for a diagnosis of major depression. Dr. McRee has attached to his affidavit as Exhibit B copies of medical/mental health encounters for the Plaintiff evidencing evaluations and treatments Plaintiff has received.

Dr. McRee attests that Plaintiff presented to the medical office on October 30, 2016 and asked to be taken off of the heart healthy diet. Plaintiff signed a refusal form (attached to McRee's affidavit as Exhibit C), and a physician's assistant ordered the heart healthy diet be

---

[10](...continued)
never been served, and Plaintiff has not provided any cause to the Court or even contacted the Court about this matter, despite having been instructed to do so through a court order. Therefore, Nurse Jones should be dismissed as a party Defendant, without prejudice, pursuant to Rule 4(m), Fed.R.Civ.P. All claims asserted against Nurse Jones (to the extent they can be considered part of the claims Plaintiff is asserting in this case) should also be dismissed, without prejudice. This will allow Plaintiff to refile his claims against Nurse Jones, if he believes he has grounds to do so.

[11]The Defendants have also provided affidavit and documentary evidence show that Plaintiff did not properly exhaust his administrative remedies with respect to his claims. However, they have not moved for summary judgment on that ground.



discontinued, even though a nurse reported that there was no documentation that Plaintiff was even on a heart healthy diet. Dr. McRee attests that Plaintiff did not complain during this visit about food poisoning or about blood in his stool or urine, citing also to attached Exhibit B, Encounter No. 646. Dr. McRee further attests that subsequently, during Plaintiff's weekly evaluation by a mental health counselor on November 3, 2016, Plaintiff reported that his appetite was "good", but that medications were making his stomach hurt. See also attached Exhibit B, Encounter No. 647. Dr. McRee attests that, thereafter, Plaintiff continued to deny to mental health counselors that he had any appetite problems.

Dr. McRee attests that on March 10, 2017, Plaintiff was transferred to the lower level Behavioral Management Unit at the Allendale Correctional Institution. On March 15, 2017, Plaintiff was seen by a medical doctor, who noted that Plaintiff did not have any medical problems. See also attached Exhibit B, Encounter No. 665. Moreover, during an evaluation by a mental health counselor on March 22, 2017, Plaintiff stated "I eat good, I don't leave nothing on them trays". See also attached Exhibit B, Encounter No. 672. Dr. McRee attests that Plaintiff then presented to sick call on May 18, 2017, complaining that he had been put on a heart healthy diet while at the Kershaw Correctional Institution in 2016, and that he started "peeing blood" which had continued since then. McRee attests that Plaintiff reported that "it hurt and burned when he urinated", and that although he knew he was no longer on a heart healthy diet, Plaintiff reported that he continued to have blood in his urine. Dr. McRee attests that as a result a doctor ordered that a urinalysis be conducted, that a urinalysis was in fact conducted on May 24, 2017, and that this urinalysis was "negative" for blood. See also attached Exhibit B, Encounter Nos. 764 and 772; see also Attachment E to Dr. McRee's Affidavit.



Dr. McRee attests that there is no evidence that Plaintiff was ever on a heart healthy diet at any time after he entered prison in October 2016, there is no evidence that Plaintiff was forced to eat heart healthy diet trays, which allegedly caused him to throw up blood and hurt him day and night, and that Plaintiff's medical records indicate that he only complained one time, on May 18, 2017, about blood in his urine. Dr. McRee attests that a nurse and doctor examined him and ordered a urinalysis, which showed that his urine was negative for blood, and that there is no evidence Plaintiff complained about blood in his urine before or after this encounter. Dr. McRee further attests that according to Plaintiff's medical records, he never complained at any time to any nurses, doctors or mental health counselors about food poisoning or blood in his stool, that mental health counselors tried to evaluate Plaintiff on a weekly basis, and that there is no evidence in Plaintiff's medical/mental health records that mental health counselor Goodsons (sic) knew about and/or ignored Plaintiff's alleged complaints about food poisoning or blood in his stool and urine. Dr. McRee further attests that there is no evidence that Defendant Food Service Supervisor Marshall, Defendant Associate Warden Lane, Defendant Warden Riley, or Defendant Lt. Chestnut, knew about and/or ignored Plaintiff's alleged complaints about food poisoning or blood in his stool and urine. Moreover, Dr. McRee attests that Plaintiff's mental illness and "unstable mind" are not caused by any alleged food poisoning, and that there is no evidence that Plaintiff had "withdrawals" from any alleged food poisoning or blood in his stool and urine. See generally, McRee Affidavit, with attached Exhibits.

In order for Plaintiff to avoid summary judgment and proceed with his claim for denial of medical care as a constitutional violation, the evidence must be sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's



serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).  As noted, Plaintiff has failed to submit any such evidence, while to the contrary the evidence before this Court, including Plaintiff's medical and other prison records as well as the sworn affidavit from a medical professional, shows that Plaintiff received continuous and ongoing treatment for his medical complaints.  Plaintiff was regularly seen by nurses and nurse practitioners and evaluated by medical professionals, received a urinalysis when he complained about blood in his urine (which was negative), and was prescribed medications for his complaints.  While Plaintiff obviously disagrees with the course of his medical treatment, none of the medical evidence provided to this Court shows that any named Defendant, or any other medical personnel, were deliberately indifferent to Plaintiff's complaints about being "poisoned" or his serious medical needs.  Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

The evidence reflects that the medical professionals involved in Plaintiff's case evaluated his condition and decided the type of care and treatment that was warranted based on their professional experience and judgment, and Plaintiff's mere lay disagreement with the opinions or diagnoses of these medical professionals, without any contrary *medical* evidence to show that any medical professional violated the requisite standard of care, is not sufficient to maintain a §1983



deliberate indifference lawsuit. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]). Plaintiff cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and testimonial evidence showing that Plaintiff was regularly seen and evaluated by medical personnel for his complaints, and which refute Plaintiff's claims of being poisoned or receiving inadequate medical care. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Levy, 1997 WL 112833 at * 2 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Plaintiff may, of course, pursue a claim in state court if he believes that the medical care provided to him constitutes malpractice. However, that is not the issue before this Court. Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient



to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be dismissed.[12]

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 21, 2017
Charleston, South Carolina

---

[12]As previously discussed, Plaintiff's claims against the Defendant Nurse Jones should be dismissed without prejudice for the reasons stated.

- 11 -



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).